Argued May 1, affirmed June 28, 1961

# MILTON BOX COMPANY *v.* SILVER LAKE DITCH COMPANY ET AL

### 363 P. 2d 202

*George H. Corey,* Pendleton, argued the cause for appellant. On the briefs were Corey & Byler, Pendleton, and George E. Richards, Enterprise.

*Robert V. Chrisman,* Enterprise, argued the cause for respondents. On the brief were Wilson & Wilson, Joseph, and Chrisman & Ricker, Enterprise.

Before MCALLISTER, Chief Justice, and ROSSMAN, WARNER, SLOAN, O'CONNELL and GOODWIN, Justices.

O'CONNELL, J.

Plaintiff, which is the owner of several lots adjoining Wallowa lake, brings this suit to enjoin defendants, several ditch companies which are collectively known as the Associated Ditch Companies, from submerging a part of plaintiff's land through the operation of defendants' dam, and to recover damages for past injury resulting from such submergence. The trial court enjoined the defendants from submerging plaintiff's land above a certain authorized level (which will be described below) and gave judgment in the amount of $1,000 for past damage. Plaintiff appeals from the decree and judgment.

By deed dated February 8, 1919, Mary E. Stanley granted to The Dobbins Ditch Company, one of the defendants, a right to overflow plaintiff's lands through the elevation of the waters of Wallowa lake "25 feet in a perpendicular line above low water mark." The deed further granted "the right to lower the said water four feet below said low water mark."

Plaintiff contends that the damage to its land re-

sulted from raising the level of the water more than 25 feet above the low water mark. The principal issue in this case is the location of the low water mark to which the Stanley deed referred. There is no direct evidence establishing the low water mark of Wallowa lake. The lower court found the low water mark to be at 3.4 feet above the sill of the outlet gates of the dam. It found the elevation of the sill to be 4,355.66 feet above sea level. Plaintiff contends that the low water mark is at the same level as the sill of the outlet gates. The sill of the outlet gates is shown as zero datum on a gauge which measures the height of the water at the upstream face of the dam. The water in the reservoir reached a level of 29.85 feet on the gauge on June 5, 1957, a date within the period during which plaintiff alleges its land was submerged in excess of the maximum permissible height specified in the Stanley deed of easement. Since defendants claim only the right to store water to a height of 28.47 feet on the existing gauge it is apparent that they raised the level of the lake 1.38 feet above the level asserted by them as being within the terms of the grant. The trial court determined that defendants have the right to store water to a height of 28.4 feet on the present gauge. In giving judgment for the amount of $1,000 it regarded the unauthorized raising of the level by 1.45 feet (29.85 feet actual high water minus 28.4 feet found to be the authorized level) as the cause of plaintiff's damage.

The central issue on appeal is whether defendants introduced sufficient evidence to establish the low water mark at a point 3.4 feet above the sill of the outlet gate. It is conceded that the conclusion reached by the trial court was based upon circumstantial evi-

dence since, as we have already mentioned, there was no direct evidence establishing the location of the low water mark at the time the Stanley deed was executed.

The dam was first constructed in 1916—approximately three years prior to the execution of the Stanley deed. Subsequently, additions were made to the dam raising its height but the sill of the outlet gate at all times remained at the same level as when it was constructed in 1916. There is no direct evidence which aids in explaining why the outlet gates were constructed at the particular level at which they are located. As the trial judge pointed out in his memorandum opinion, "[i]t would seem reasonable to conclude that the gates were constructed at the low water mark. If the gates had been established at an elevation above low water mark, then certain natural flow of the stream would be impounded as dead storage. If the outlet gates were constructed at a level below low water mark, there would be no advantage gained over their construction at low water mark, unless it were intended to lower the level of the lake." However, defendants produced evidence which would tend to show that the low water mark was above the outlet gate sill. This evidence is ably analyzed in the following excerpts from the memorandum opinion of Judge Brownton:

"* * * The only substantial and satisfactory evidence in this case upon which a determination can be made as to the low water mark is the river channel extending between the lake and the dam. The elevation of the lake at low water mark in 1919 would have been identical to the elevation of the highest point in the bottom of the river channel. The highest point in the bottom of the river channel would have been

the true elevation of low water.[1] The defendants contend that the bottom of the channel has not changed since that time, whereas the plaintiff contends that it has been raised by the sloughing off of the channel sides and the depositing of rock and debris in the bottom of the channel. The court has reviewed very carefully the evidence in respect to any change that may have occurred in the channel which bears upon the question of the low water mark. The evidence is undisputed that the current is rather swift through the channel and that dirt and debris and rocks have been carried from the channel through the gate openings. The evidence indicates a very rapid drop in the channel as it reaches the gates and this would indicate that debris and dirt which might otherwise have remained on the channel bottom would more probably flow through the gates. There is further evidence that an attempt was made to dredge the channel bottom but without success. The only evidence presented as to a change in the bottom of the channel is the testimony that there has been a sloughing off of the sides of the channel consisting of dirt and rocks. There is no evidence that this material actually remained upon the bottom of the channel. The physical facts in respect to the flow of the stream and the deposit of rocks through the gates as well as the condition of the channel as found when an attempted dredge was made indicate that the sloughing off materials were not de-

---

[1] To be precise, the low water mark would be slightly higher than the high point in the channel. This would be so because even at times of lowest water some water flows through the channel and the low water mark would be at the surface. However, the testimony indicates that the depth of the water flowing over the high point in the channel at times of lowest water is only approximately .6 to .7 of a foot. In view of the fact that defendants contended for a finding no more favorable to them than that the low water mark was at 3.47 feet on the gauge at the dam, for purposes of this case we shall disregard this minor element of the depth of the stream flowing over the high point in the channel at times of lowest water in finding the low water mark at 3.4 feet on the existing gauge. (footnote ours)

posited upon the bottom of the channel in such a manner as to increase its height. According to the testimony of Mr. Wilson, recent readings were made as to the depth of the water at a high point in the channel and that these readings varied from eight feet to nine feet 10 inches. At the time the readings were made the gauge reading showed 12 feet three inches. This would indicate that the low water mark was four feet three inches above zero datum. In 1929, however, the figure of 3.4 feet was considered as the differential and this figure is the one which is claimed by the defendants as the elevation above the gate sills. It is true that there is no explanation as to the manner in which 3.4 feet was established. It is clear, however, that the low water mark is higher than the sill gates and that the claim of the defendants that the low water mark is 3.4 feet above the sill gates has the greatest probability of being the accurate low water mark. It is the opinion of the court that the bottom of the river channel at its highest point is substantially the same as it was in 1919. It is, therefore, the finding of the court that the true low water level of the lake in 1919 was at a point 3.4 feet above the sill of the outlet gates and that the true zero datum should be established at such 3.4 feet above the sill gates."

It will be recalled that the Stanley deed, in addition to granting the right to raise the waters of Wallowa lake 25 feet above low water mark, also granted "the right to lower the said water four feet below said low water mark." The outlet gates of the dam were in existence at the time that deed was executed. If the gate sill was at low water mark the right to lower the lake an additional four feet below low water mark would be of no value because obviously the water could not, through the ordinary methods of releasing

impounded waters, be lowered below the low water mark through an outlet located at the low water mark level. We believe that this provision in the deed creates a strong inference that the gate sill was approximately four feet below the low water mark.

■ As the trial court pointed out, the highest point in the channel leading from the lake to the dam would be the low water mark (subject to the minor qualification expressed in footnote 1, supra). Measurements made by defendants showed that when the gauge was at 12 feet the height of the water at the highest point in the channel was approximately eight feet, a differential of four feet. The removal of this obstruction in the channel would permit the lowering of the lake an additional four feet, which suggests that the provision in the Stanley deed permitting the lowering of the level of the lake four feet below low water mark was inserted in light of this condition of the channel. We are of the opinion that the evidence is sufficient to support the trial court's conclusion as to the location of the low water mark of Wallowa lake.

■ Plaintiff contends that defendants are bound by admissions made in certain pleadings filed by defendants in three previous actions brought against defendants by persons whose lands were flooded as a result of a release of water from the dam. In those actions, each of which involved essentially the same facts as the others, defendants' verified answers in effect alleged that the low water mark was at the same level as the gate sill of the dam. These allegations were evidentiary admissions. Annotation: Admissibility of pleading as evidence against pleader, on behalf of stranger to proceedings in which pleading was filed, 63 ALR2d 412 (1959); McCormick, Evidence, pp. 512-513 (1954); 4 Wigmore, Evidence (3rd ed 1940),

§§ 1057-1059, 1065-1066. However, they are not conclusive; rather they are to be weighed with the other evidence in the case. Since the location of the low water mark was not a material issue in those previous cases, we agree with the trial court in assigning limited weight to the allegations.

■ Plaintiff urges that since the Stanley deed granted an easement only to the Dobbins Ditch Company the other defendants had no privilege to flood plaintiff's land and that, therefore, the defendants other than the Dobbins Ditch Company should have been enjoined. The Stanley deed contained the following provision:

> "The said strip of land shall be used by the said grantee for the purpose of overflowing the same with the privileges of said grantee, its successors, assigns and all persons acting under, by, or through its authority to enter on said right of way, or easement, for the purpose of building, repairing or using the said land for all lawful purposes connected therewith."

From this provision it is apparent that it was the intention of the grantor to create in the grantee an easement broad enough to permit the assignment of all or a part of the grantee's interest. Considering the character of the easement we believe that it is reasonable to construe the grant as embracing the right of the grantee to permit others to participate in the use of the dam for the purpose of impounding waters up to the elevation specified in the deed. Since in any event the maximum permissible level is as specified in the deed of easement, it does not appear that the association of the grantee with other ditch companies in storing and using the water will effect a greater burden upon the servient lands.

■ In calculating the damage to plaintiff's land the trial court proceeded on the theory that defendants were not liable for any wave damage, if the level of the water in the lake as measured by the gauge at the dam did not exceed 25 feet above the low water mark. Plaintiff argues that the grantor of the easement did not intend to fix the 25-foot level in terms of water at rest but rather intended to set the maximum level in terms of the water in motion. We think that since the parties must have intended that the measurement would be made at the dam face where the water would be relatively still, the lower court's interpretation is the more reasonable. We are unable to improve upon the trial court's estimate of the damages resulting from the unprivileged conduct of defendants in raising the water level above the 25-foot level specified in the deed. Further, we agree with the trial court's determination that punitive damages are not warranted.

The decree and judgment of the lower court is affirmed.